IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TYHEIA S.,                          *
                                    *
            Plaintiff,              *
                                    *
      vs.                           *      Civil Action No.   ADC-21-3185
                                    *
KILOLO KIJAKAZI,                    *
Acting Commissioner,                *
Social Security Administration      *
                                    *
            Defendant.              *
                                    *

* * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM OPINION**

On December 15, 2021, Tyheia S. ("Plaintiff" or "Claimant") petitioned this Court to review the Social Security Administration's ("SSA") final decision denying her claims for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). ECF No. 1 ("the Complaint"). Plaintiff and Defendant filed cross-motions for summary judgment (ECF Nos. 11, 16) on June 23, 2022 and November 7, 2022, respectively.[1] Plaintiff further responded in opposition to Defendant's Motion on November 28, 2022. ECF No. 17. After considering the parties' motions, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 11) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED, and the SSA's decision is AFFIRMED.

---

[1] On December 15, 2021, all parties consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. *See* ECF No. 4. On November 30, 2022, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings.

## PROCEDURAL HISTORY

Plaintiff originally filed applications for DIB and SSI on October 13, 2009 for an alleged disability beginning July 19, 2009. ECF No. 8-3 at 12.[2] These claims were initially denied on July 26, 2010, and upon reconsideration on December 20, 2010. *Id.* Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on April 16, 2012. *Id.* On May 4, 2012, the ALJ rendered a decision finding that Plaintiff was not disabled under the Act as there were "jobs that exist in significant numbers in the national economy" that she could perform. *Id.* at 20. Plaintiff then requested a review of the ALJ's decision, which the Appeals Council denied on May 13, 2013. *Id.* at 2. This Court, however, vacated and remanded the ALJ's decision on September 8, 2014 after concluding that she "failed to consider all of the medical evidence[.]" *See Smith v. Colvin*, JMC-13-1973, ECF No. 23, at * 3 (D.Md. Sept. 8, 2014). The Appeals Council subsequently vacated the final decision on January 30, 2015. ECF No. 8-10 at 25-26.

After a remand hearing, an ALJ rendered another decision on February 9, 2016 which similarly denied Plaintiff's claims for DIB and SSI. ECF No. 8-10 at 30-42. The ALJ again concluded that "there [were] jobs that exist in significant numbers in the national economy that the claimant [could] perform." ECF No. 8-10 at 41. Plaintiff then requested review of the ALJ's decision, which the Appeals Council granted on January 13, 2017. *Id.* at 52-53. After finding, among other things, that the ALJ's Residual Function Capacity ("RFC") assessment was not supported by substantial evidence, the Appeals Council remanded the case back to the ALJ. *Id.*

On February 2, 2018, the ALJ found for a third time that there were "jobs that exist in significant numbers in the national economy that the claimant [could] perform." ECF No. 8-9 at

---

[2] Although ECF No. 8 is independently paginated, this Opinion cites to the page numbers assigned by CM/ECF.

12-24. Plaintiff then requested review of the ALJ's decision, which the Appeals Council denied

on March 22, 2019. ECF No. 8-16 at 28-32. This Court, however, reversed this decision on October

8, 2020, after concluding (1) that the ALJ did not adequately explain how Plaintiff's "time off

task" was calculated and (2) that the ALJ's utilization of the VE's unclear testimony rendered the

step five determination unreviewable for substantial evidence. *See Tyheia S. v. Saul*, DLB-19-

1378, ECF No. 24, at *1-5 (D.Md. October 8, 2020). The Appeals Council subsequently vacated

the final decision on October 16, 2020. ECF No. 8-16 at 40-42.

The ALJ held a virtual remand hearing on August 9, 2021.[3] ECF No. 8-15 at 5-22. On

September 1, 2021, the ALJ, like his predecessors in this case, concluded that Plaintiff was not

disabled as there were "jobs that exist in significant numbers in the national economy that the

claimant [could] perform." *Id.* at 21. Because Plaintiff did not request review from the Appeals

Council, the ALJ's decision became the final decision of the SSA. *See* 20 C.F.R. §§ 416.1453,

416.1455; *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). On December 15, 2021, Plaintiff filed a

Complaint in this Court seeking judicial review of the SSA's denial of her disability applications.

ECF No. 1.

### STANDARD OF REVIEW

This Court may review the SSA's denial of benefits under 42 U.S.C. § 405(g). *Johnson v.

Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court's review

of an SSA decision is deferential: "[t]he findings of the [SSA] as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See Smith v. Chater*, 99 F.3d 635,

638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a

reviewing court."). The issue before the reviewing Court is whether the ALJ's finding of

---

[3] The hearing was held virtually due to the COVID-19 pandemic. ECF No. 8-15 at 5.

nondisability is supported by substantial evidence and based upon current legal standards. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations omitted). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In a substantial evidence review, the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the Court must determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

To be eligible for DIB or SSI, a claimant must establish that she is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows a five-step sequential evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920. *See Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments]" that is either expected to result in death or to last for a continuous twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. If not, the claimant is not disabled. At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled, regardless of her age, education, and work experience. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Claimant's RFC "is an assessment of

an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must then evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). At this second step, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (citations omitted)). Requiring objective medical evidence to support the claimant's subjective evidence of pain "improperly increase[s]

6

[her] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. Claimant has the burden of proof during steps one through four of the evaluation. 20 C.F.R. §§ 404.1520, 416.920. *See Radford*, 734 F.3d at 291. However, at step five, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given her age, education, work experience, and RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See Hancock*, 667 F.3d at 472–73. If the claimant can perform other work that exists in significant numbers in the national economy, she is not disabled. If the claimant cannot perform other work, she is disabled.

## THE ALJ'S DETERMINATION

The ALJ performed the sequential evaluation and found at step one that Plaintiff engaged in substantial gainful activity as a companion caregiver in 2017, the third and fourth quarters of 2019, and the first quarter of 2020. ECF No. 8-15 at 7-8. Despite this substantial gainful activity, the ALJ found that "there has been a continuous 12-month period(s) during which claimant did not engage in substantial gainful activity." *Id.* at 9. At step two, the ALJ found that Plaintiff suffers from the severe impairments of asthma, obesity, bipolar disorder, and obsessive-compulsive disorder. *Id.* at 9. The ALJ also concluded that Plaintiff suffers from the non-severe impairment of diabetes mellitus. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. *Id.* at 10. The ALJ then determined that Plaintiff had the RFC:

7

[T]o perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except: She can frequently climb ramps, stairs, ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards such as moving machinery and unprotected heights. She can perform unskilled work at the reasoning level of 1 or 2, with occasional changes in routine work setting and work processes, and occasional interaction with coworkers and the public.

*Id.* at 12.

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" *Id.* In doing so, the ALJ carefully considered the opinion evidence obtained from various medical professionals. *Id.* at 16. The ALJ gave "substantial weight" to the opinions of Maurice Prout, Ph.D. and Daniel Walcutt, Ph.D. as they were "consistent with and supported by the medical evidence of record[.]" *Id.* at 17. He gave "great weight" to the opinions of Patricia A. Clark, Psy.D. and Jane Cormier, Ph.D., as they were "generally consistent with and supported by the medical evidence of record." *Id.* at 18.

The opinions of Alan Peck, M.D. and S.K. Najar, M.D. were afforded "little weight" as they were "not fully consistent with or supported by the medical evidence of record." *Id.* at 18-19. In making this finding, the ALJ noted that Dr. Peck's report was "largely based upon the claimant's self-report" and disagreed with his conclusion that Plaintiff was "'almost functionless' due to her symptomology" as the "the record demonstrate[d] a significant level of residual functioning, despite the claimant's severe medically determinable impairments." *Id.* And, the ALJ explained that the medical evidence of record did not support Dr. Najar's conclusion that "claimant would have no functional limitations related to" her asthma, as the record demonstrated that this condition, in combination with Plaintiff's obesity, requires "restrictions on postural activities and exposure to certain environmental conditions[.]" *Id.* at 19.

At step four, the ALJ found that Plaintiff had no past relevant work experience. *Id.* at 21. Finally, at step five, the ALJ, considering Plaintiff's age, education, work experience, and RFC, found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 21. Specifically, the ALJ noted that Plaintiff could perform the requirements of a Mat Packer (DOT# 579.686-014) and Candy Spreader (DOT# 520.687-022). *Id.* Thus, the ALJ concluded that Plaintiff was not disabled under the Act. *Id.* at 22.

## DISCUSSION

In cases filed before March 27, 2017, all medical evidence must be weighed in accordance with 20 C.F.R. § 416.927(c)(2) and 20 C.F.R. § 404.1527(c)(2).[4] Under these regulations, ALJ's are required to comply with the "treating physician rule," which requires that the medical opinions of treating sources be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R §§ 416.927(c)(2), 404.1527(c)(2). The United States Court of Appeals for the Fourth Circuit has explained that the treating physician rule is "robust" and that an opinion of a treating source "may be disregarded only if there is persuasive contradictory evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 (4th Cir. 2020) (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)).

If a medical opinion is not afforded controlling weight under the treating physician rule, "an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the '[l]ength of the treatment relationship and the frequency of examination'; (2) the '[n]ature and extent of the treatment relationship'; (3) '[s]upportability,' i.e., the extent to

---

[4] In cases filed after March 27, 2017, ALJ's weigh medical evidence in accordance with 20 C.F.R. § 404.1520c and 20 C.F.R. 416.920c.

which the treating physician 'presents relevant evidence to support [the] medical opinion'; (4) '[c]onsistency,' i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to 'issues related to his or her area of specialty'; and (6) any other factors raised by the parties 'which tend to support or contradict the medical opinion.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384-85 (4th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)(i)-(6)).

## A. The ALJ's Consideration of the 20 C.F.R. §§ 416.927(c)(2) and 404.1527(c)(2) Factors

Here, Plaintiff argues that this Court should reverse, or in the alternative remand, the ALJ's final decision as his RFC analysis is not supported by substantial evidence. ECF No. 11-1 at 10, 21. The ALJ, Plaintiff avers, did not properly analyze the factors listed in 20 C.F.R. § 404.1527(c)(2) when assigning Dr. Peck's opinion a weight. *Id.* at 12-21. Defendant, on the other hand, argues that the ALJ provided "reasonable support from the evidence of record" for his conclusion that Dr. Peck's opinion deserves "little weight," as he considered the opinion's supportability and consistency. ECF No. 16-1 at 6.

This Court, in *Baxter v. Astrue*, explained that while an ALJ "must at least indicate that he or she was aware of and considered all of the factors" listed in 20 C.F.R. § 416.927(c)(2) and 20 C.F.R. § 404.1527(c)(2), the ALJ need not expressly discuss each factor. No. SKG-10-3048, 2012 WL 32567, at *6-7 (D.Md. Jan. 4, 2012) (citing *Burch v. Apfel*, 9 Fed.Appx. 255, 259-60 (4th Cir. 2001) (per curiam)). There, as here, the plaintiff argued that remand was required as the ALJ had not considered each of the enumerated factors. *Id.* at 6-8. Although the ALJ did not reference the medical professional's specialty as a psychiatrist in his written report, the Court found that it was "highly likely" that the specialty was known as (1) the ALJ referenced it several times during the hearing; (2) the medical records cited by the ALJ indicated that the professional was a psychiatrist;

10

and (3) the ALJ recognized that the professional was a medical doctor by including the suffix

"M.D." after her name several times in his written opinion. *Id.* at 7. The Court next explained that

the ALJ did compare the medical professional's opinion to the record evidence, finding that the

opinion was "not supported by the evidence of record." *Id.* This comparison was, however,

insufficient as the ALJ "did not explicitly state *which* pieces of evidence in the record . . . contradict

[the medical professional's] opinion." *Id.* The Court was also not satisfied that the ALJ appreciated

the "length, frequency or nature" of the medical professional's treatment of plaintiff. *Id.* at 8.

Accordingly, because the Court was "not confident that the ALJ considered all the factors," it

concluded that remand was necessary. *Id.*

Here, neither party argues that Dr. Peck's opinion is entitled to controlling weight under

the treating physician rule. *See* ECF No. 11 at 20 ("Dr. Peck was not a treating physician entitled

to controlling weight under the treating physician rule[.]"). Accordingly, I begin my analysis with

the 20 C.F.R. § 416.927(c)(2) and 20 C.F.R. § 404.1527(c)(2) factors. Under the first factor, the

Court is satisfied that the ALJ knew that Dr. Peck was a psychiatry specialist and was opining on

matters within his specialty as the ALJ used the suffix "M.D." in his report and the relevant medical

record, which the ALJ cited in his written determination, is captioned "Maryland Disability

Determination Services *Psychiatric/Medical Report*." ECF No. 8-15 at 18; ECF No. 8-8 at 142

(emphasis added). The record similarly shows that the ALJ considered that Plaintiff and Dr. Peck

did not have a continuing or extensive treatment relationship, as the written determination reflects

that "claimant has not received any mental health treatment since 2015[.]" ECF No. 8-15 at 15.

The singular medical report submitted by Dr. Peck also facially demonstrates the limited nature

and scope of the treating relationship, as it lists only one session which was conducted three days

before the final report was submitted. ECF No. 8-8 at 142-45.

The ALJ also opined that Dr. Peck's opinion was not supportable because it was based "upon the claimant's self-report." ECF No. 8-15 at 18. The ALJ explained that he was particularly troubled that the report focused on "the claimant's issues with her father" which were "noted, at most, minimally within the available treatment records." *Id.* And, finally, the ALJ found that Dr. Peck's opinion that Plaintiff was "'almost functionless' due to her symptomatology" was not consistent with the weight of the record evidence demonstrating the "significant level of residual functioning" that Plaintiff was able to achieve "despite [her] severe medical determinable impairments." *Id.* at 18-19. Unlike in *Baxter*, the ALJ specified that Dr. Peck's conclusion conflicted with the substantial evidence proving that "the claimant has been able to work as a companion caregiver." *Id.* at 19. Accordingly, the ALJ understood and considered all of the listed factors.

**B. The ALJ's Decision to Assign Dr. Peck's Report "Little Weight" Is Supported By Substantial Evidence.**

Plaintiff also disagrees with the ALJ's conclusion that Dr. Peck's opinions are "largely based upon the claimant's self-report" as Dr. Peck (1) "formulated his medical opinion . . . only after directly observing Plaintiff" and (2) "discussed and considered [Plaintiff's] medical history before offering a medical opinion." ECF No. 11-1 at 16-17. In Plaintiff's view, this "patently false" characterization also disregards that Dr. Peck "provided the only medical opinion of record that was based on direct observation of Plaintiff." *Id.* In response, Defendant argues that the ALJ properly considered Dr. Peck's report and that the Plaintiff is, on appeal, improperly asking that this Court conduct a de novo review of the medical evidence. ECF No. 16-1 at 6. Defendant also asserts that "the ALJ was not bound by any of the opinions, nor was he predetermined to accord more weight to an opinion from an examining over a non-examining source[.]" *Id.* at 7. Such a categorical rule would, according to Defendant, "render an evaluation of the merits of the opinion

12

entirely useless." *Id.*

In assigning medical opinions weight, ALJ's must "give good reasons in [their] notice of determination or decision for the weight [they] give [claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). ALJs are not, however, required to "parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment." *Jackson v. Comm'r, Soc. Sec.*, No. CCB-13-2086, 2014 WL 1669105, at *2 (D.Md. Apr. 24, 2014). Indeed, an ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 Fed.App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

Plaintiff is correct that, "generally," "more weight is given 'to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(1)). However, if properly explained, "the opinions obtained from non-examining medical sources (such as state agency physicians) may be entitled to greater weight than the opinions of treating or examining sources." *Yang v. Saul*, No. GCM-10-CV-699, 2020 WL 4819954, at *4 (W.D.N.C. Apr. 19, 2020) (citing SSR 96-6p); *see also Furey v. Saul*, 501 F.Supp.3d 29, 46 (D.Mass 2020) ("ALJs may afford greater weight to non-examining, non-treating sources than to examining and/or treating sources."). Here, the ALJ explained that, despite his status as an examining source, Dr. Peck's opinion was entitled to a weight lesser than that of non-examining sources because the record evidence contradicted his conclusion that Plaintiff was "'almost functionless' due to her symptomology." ECF No. 8-15 at 18. Accordingly, because the ALJ explained that Dr. Peck's opinion was "not consistent with or supported by the medical

evidence of record," his decision to deviate from the from the general rule and assign Dr. Peck's report a lesser weight is supported by substantial evidence. *Id.*

The Court also finds that the ALJ properly considered that Dr. Peck's opinions were largely based on information self-reported by Plaintiff. Initially, it is clear from the report that Dr. Peck grounded his conclusions in information that Plaintiff reported to him and the behavior that Plaintiff demonstrated during their session. ECF No. 8-8 at 142-145. For example, while Dr. Peck fails to cite objective medical records in the "History" section of his report, he recounts several incidents that Plaintiff reported to him related to her prior employment, romantic partners, and family life. *Id.* at 142-44. Similarly, the "Mental Status Examination" noted that Plaintiff "related fairly well to me," "said that she has racing thoughts," and "had some good insight into herself." *Id.* at 144. Accordingly, I find that the ALJ's characterization of Dr. Peck's report is supported by substantial evidence and that the dearth of objective medical evidence in the report further supports the ALJ's conclusion that Dr. Peck's opinion be afforded "little weight." *See Mastro v. Apfel*, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming an ALJ's decision to disregard the opinion of a treating physician because the opinion "was based largely upon the claimant's self-reported symptoms").

**CONCLUSION**

In sum, the Court finds that the ALJ properly evaluated the record and provided substantial evidence to support his finding that Plaintiff was "not disabled" within the meaning of the Act. Therefore, based on the foregoing and pursuant to 42 U.S.C. § 405(g), Plaintiff's Motion for Summary Judgment (ECF No. 11) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED, and the decision of the SSA is AFFIRMED. A separate order will follow.

Date: 12/12/22

A.  David Copperthite
United States Magistrate Judge